```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
                              MIAMI DIVISION
                      CASE NO. 1:21-cv-22245-BB


GEORGIA CAMPBELL,

           Plaintiff,                    July 12, 2022
                                         9:02 a.m.
           vs.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

           Defendant.                    Pages 1 THROUGH 42
_____


                    TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE BETH BLOOM
                  UNITED STATES DISTRICT JUDGE


Appearances:

FOR THE PLAINTIFF:   THE CONSUMER JUSTICE LAW FIRM
(Via Zoom)           YOSEF STEINMETZ, ESQ.
                     8245 North 85th Way
                     Scottsdale, Arizona 85258


FOR THE DEFENDANT:   JONES DAY
(Via Zoom)           ERIC A. NICHOLSON, ESQ.
                     150 West Jefferson Avenue, Suite 2100
                     Detroit, Michigan 48226


COURT REPORTER:      Yvette Hernandez
                     U.S. District Court
                     400 North Miami Avenue, Room 10-2
                     Miami, Florida 33128
                     yvette_hernandez@flsd.uscourts.gov
```

```
1        (Call to order of the Court, 9:02 a.m.)
2             THE COURT:  All right.  Good morning to each of you.
3             Can everyone hear me?
4             Two years out, and we still can't figure this out.
5             All right.  Good morning to everyone.  Let's go ahead
6    and call the case and we can get started.
7             COURTROOM DEPUTY:  Calling Civil Case Number 21-22245,
8    Campbell v. Experian Information Solutions, Inc., et al.
9             Counsel, please state your appearances for the record,
10   beginning with Plaintiff's counsel.
11            MR. STEINMETZ:  Good morning, Your Honor.  Yosef
12   Steinmetz on behalf of Plaintiff, Georgia Campbell.
13            THE COURT:  All right.  Good morning.
14            MR. STEINMETZ:  Good morning.
15            MR. NICHOLSON:  And good morning, Your Honor.  Eric
16   Nicholson appearing on behalf of Experian Information
17   Solutions.
18            THE COURT:  Good morning to each of you.
19            Before the Court for hearing is Docket Entry 54,
20   Defendant Experian Information Solutions's motion for summary
21   judgment.  And I have had an opportunity to review the motion,
22   the statement of facts not in dispute, the response, as well as
23   the reply and the case law.
24            And Mr. Nicholson, since obviously you have the burden
25   of showing the Court that there is no genuine issue of material
```

1    fact, if I may ask, sir -- I've looked at the case that you

2    have cited in support of your motion.  That is the Baitcher

3    case.  And I'm failing to see in that case why the Court should

4    find as a matter of law that the fact that the First Progress

5    debt was not included in the bankruptcy schedule -- that it's

6    not subject to discharge, when the Court has other case law

7    that specifically states that it's not required.

8            And I refer to Benjamin v. Experian Information

9    Solutions, as well as In re Shearls.  And in that case, the

10   court notes that a dischargeable debt is discharged even when a

11   creditor has been omitted from schedule.  So where would the

12   Court find support that -- and that's the first point, that

13   the -- because the Plaintiff did not report this debt on the

14   bankruptcy schedule, that the Plaintiff cannot show that

15   Experian's reporting was inaccurate?

16           MR. NICHOLSON:  Sure.  Thank you, Your Honor.

17           And I appreciate the question.  So Baitcher, I think,

18   under a fair reading, it's -- it establishes two requirements

19   for a debtor in a no-asset bankruptcy to obtain a discharge of

20   an initially unscheduled debt, and it inquires as to the

21   debtor's intent in not scheduling the debt.  And there is --

22   there's -- as highlighted in our reply brief, this is a circuit

23   split between, on the one hand, the Eleventh Circuit, the First

24   Circuit, the Fifth Circuit, and the Seventh Circuit, which

25   don't follow the rule that some courts apply that all debts are

1    discharged by operation of an order in a no-asset bankruptcy.

2    And so -- so we respectfully disagree with the cases cited by

3    Plaintiff, which did not -- most of which did not address

4    Baitcher at all.

5         The Benjamin case, the accuracy question wasn't

6    squarely before the bankruptcy court.  The plaintiff in that

7    case, in fact, amended her bankruptcy schedules to add the

8    omitted creditor.  Experian did not argue that accuracy

9    question.  And so we would submit that that case is

10   distinguishable and that none of those cases alter the rule --

11   the Baitcher holding that the debtor must show that the

12   intention -- that their omission of the debt from the

13   bankruptcy schedules was unintentional.

14        And final point.  We cite several cases in our brief

15   that apply that exact rule that come out the other way from the

16   cases Plaintiff cites.  So it's true, within the Eleventh

17   Circuit, there are cases that go either way, and that -- that

18   might go to Experian's second point that ultimately this is a

19   legal question.  Plaintiff could go before the bankruptcy

20   court.  And granted, perhaps that -- the bankruptcy court would

21   apply one of those cases.  But it's equally possible, and most

22   appropriate under Baitcher, to require her to show that the

23   debt was -- that the omission of the debt was unintentional.

24        THE COURT:  But tell the Court why, for example, in

25   the case In re Shearls, while -- and that's a direct holding --

1   why that opinion should not be followed by this Court.  And

2   that is, in this case, there's a -- it's no-assets Chapter 7.

3   In that case, the court noted:  "This case is what's commonly

4   referred to as a no-asset Chapter 7.  There are no assets to

5   administer.  Creditors are not even required to follow claims.

6   And most courts have held in a no-asset case a dischargeable

7   debt is discharged, even when a creditor has been omitted from

8   schedules, and thus reopening is both unnecessary and futile."

9   So why would the Court not follow that holding?

10         MR. NICHOLSON:  Sure.  And I think that answer is

11   Baitcher, which, again, the existence of Baitcher, you know,

12   would not honestly make sense if reopening a case were futile.

13   So that antecedent question of reopening a case, that wasn't

14   addressed by -- directly by Baitcher because the case was

15   already moved to reopen.  But, in so ruling, Baitcher held that

16   the debtor was -- was required to show lack of intent or that

17   the omission of the debt was unintentional.

18         And so, respectfully, Experian's position is that

19   Baitcher controls, rather than -- Baitcher is binding Eleventh

20   Circuit precedent and controls, rather than a, you know,

21   bankruptcy court's decision.

22         THE COURT:  But is the Plaintiff correct -- the

23   Plaintiff does note, and the Court notes specifically from the

24   opinion of Baitcher, that the court states -- and actually, the

25   court uses the precise language:  "Affirms the bankruptcy

1   court's determination of dischargeability of Baitcher's debt to

2   Samuel," quote, "under all subsections of 11 USC Section 523."

3        So if it's all subsections, then it would appear that

4   the reason why the Plaintiff would have the onus to come back

5   before the bankruptcy court is because of these exceptions.

6   That is, (2), (4), and (6); fraud, willful and malicious

7   injury, in subparagraph (2), false pretenses.  So wouldn't that

8   be a little bit separate and apart from where we are in terms

9   of Experian's ability to know, based on the bankruptcy itself,

10  a no-assets Chapter 7 bankruptcy, that First Progress's debt

11  was discharged because it had occurred prior to the filing of

12  the bankruptcy?

13       MR. NICHOLSON:  Sure, Your Honor.

14       So if you read Baitcher, it has that language, and

15  then it goes through in two separate sections -- two separate

16  sections, essentially.  The first is exclusively devoted to the

17  523(a)(3) exception for failure to schedule a debt.  And that

18  analysis is clearly directed specifically at that, without

19  respect to the fraud based exceptions.

20       And the intent requirement is not the intent with

21  regard to incurring the debt.  It's the intent with regard to

22  failing to schedule the debt.  So once the Court disposes of

23  that question, then it turns to the questions under the fraud

24  based exceptions, we'll say of (2), (4), and (6).  And so those

25  are separate analyses.  And the cases that apply, Baitcher,

1    along the lines that Experian's arguing here, cited in the

2    reply brief -- you know, In re Francis, In re Paylan, In re

3    McDaniel, In re Springer -- they recognize this distinction.

4            So -- sorry.

5            THE COURT:  I'm sorry.  Did you finish your argument?

6            MR. NICHOLSON:  Yeah.  I'm sorry.  I finished my

7    sentence.  I apologize.

8            THE COURT:  All right.  And can you distinguish the

9    Benjamin v. Experian, where the court did note -- in this case

10   was MoneyLion.  Was that a -- on the schedule itself, that

11   debt?

12           MR. NICHOLSON:  Yeah.  The debt was on the amended

13   bankruptcy schedule.  The plaintiff in that case amended her

14   bankruptcy schedules prior to entry of a discharge order.

15   Experian, in that case, didn't argue that its reporting was

16   inaccurate, didn't brief the Baitcher issue, and so that wasn't

17   before the court.

18           And so, you know, respectfully, here the issue is

19   squarely before the Court.  Plaintiff never -- never went

20   through the step of amending her bankruptcy schedule, either

21   before or after her bankruptcy discharge.

22           THE COURT:  And where the court notes that:  "Experian

23   undoubtedly was aware of plaintiff's bankruptcy filing and

24   discharge dates, as Experian reported them, at the same time

25   Experian reported plaintiff's bankruptcy discharge on her

1    credit report, also reported Plaintiff's pre-petition MoneyLion

2    account as having a balance being past due and eventually as

3    charged off," in this case, similar to Benjamin, where would

4    Experian have the obligation in terms of determining whether

5    the reporting is accurate or inaccurate?  Is it on a bankruptcy

6    schedule?  Is it on a credit report?  In other words, what

7    investigation would Experian be required to conduct in order to

8    determine whether its reporting is accurate?

9          MR. NICHOLSON:  So good question, Your Honor.

10          I think -- I think one important thing to note is kind

11    of the nature of a Chapter 7 bankruptcy.  These are fairly

12    summary proceedings that occur pretty quickly, and they're

13    resolved through really generalized discharge orders that list

14    examples of categories of debt that may be excepted from

15    discharge.  And it does -- there's no order, nothing that

16    indicates whether any particular debt was discharged.

17          So in circumstances like the facts presented here,

18    Experian's reliance on First Progress to inform it of the

19    post-bankruptcy status of its debt is sufficient.  You'll see

20    from the record Experian actually initially assumed that the

21    debt was a discharge of bankruptcy through application of a

22    scrub procedure that was set forth by the White injunction, a

23    federal injunction in the Central District of California.

24          So it was -- you know, in the absence of other

25    information, it assumed that Plaintiff's debt was discharged.

1    It was only when First Progress came to Experian and informed

2    it that, in fact, the debt had not been discharged that

3    Experian removed the bankruptcy reporting that it had

4    originally added.

5         And it requires -- in that instance, creditors like

6    First Progress can't simply make that update through their

7    monthly reporting.  A human has to go in and manually submit an

8    update, which is just kind of additional assurance that this

9    isn't just a, you know, mechanical error; someone intentionally

10   going in and asking Experian to remove the bankruptcy

11   reporting.

12        And final point.  It's -- given the nature of the

13   bankruptcy proceedings, and of the fact that ultimately this is

14   a dispute between Plaintiff and First Progress about what the

15   effect of the discharge was on her debt, that Experian is not

16   competent to resolve that dispute.  And it's not resolvable by

17   reviewing the bankruptcy docket or anything of that sort.  So

18   you know, under the FCRA, reliance on the furnisher on that

19   instance is reasonable.

20        THE COURT:  Well, when you say:  "Reliance on the

21   furnisher," I just want to make sure that I understand.  Under

22   the law, what -- and obviously that has evolved.  But under the

23   law, what is the obligation of Experian?  Is it just to accept

24   what First Progress reports or is it required to ensure the

25   accuracy of its reporting of the First Progress account and

```
 1    looking at the actual bankruptcy discharge order?

 2              MR. NICHOLSON:  Sure.  And I think both the parties

 3    addressed the Eleventh Circuit's decision in Losch.  And I

 4    think we both agree that that is the controlling interpretation

 5    of 1681e(b) and 1681i.  And Losch does not -- does not -- based

 6    on Experian's reading, does not impose a requirement that in

 7    every instance, you know, Experian must review a bankruptcy

 8    docket to see if anything's there.

 9              Losch made clear that its holding was very narrow

10    based on the facts of the dispute that the consumer in that

11    case submitted.  In that case, there had been -- after the

12    discharge, there had been a subsequent adjudication where he

13    belatedly rescinded his reaffirmation agreement.  So he had to

14    move to file a motion with the court.  And in his dispute, he

15    described that, and he pointed to the court's order.

16              And so, in that case, Losch held that, yes,

17    Experian -- there is a fact question that Experian might be

18    required to check the bankruptcy docket.  It's distinguishable

19    where you have generalized proceedings and generalized

20    bankruptcy --

21              THE COURT:  So to that point, Mr. Nicholson, I just

22    want to understand.  If there is a question of fact, would

23    Experian look at the discharge order or would Experian look at

24    a bankruptcy credit report?  Or what information would

25    Experian, do you believe -- and based on the testimony -- and I
```

1   believe that Plaintiff cited to your corporate

2   representative -- what would Experian's obligation be at that

3   point?

4        MR. NICHOLSON:  So Experian's -- a typical dispute

5   process is an Experian agent will receive a consumer's dispute.

6   The consumer will sometimes provide documents with the dispute.

7   You know, Experian has detailed procedures and so forth how

8   they are to process that dispute.  They must review that

9   information.

10       If the documentation submitted is sufficient to make

11  an update internally, then they can do so.  And then, if they

12  are not able to, then they contact the furnisher by means of an

13  ACDV, which occurred in this case, where they convey the

14  substance of the dispute, as well as any documents provided by

15  the consumer.  Again, those both happened with respect to

16  Plaintiff's dispute.

17       Experian also has a policy which goes beyond anything

18  that's ever been required by, you know, the express language of

19  the FCRA, or a court, or any regulatory body, to essentially

20  defer to the consumer when the consumer says:  "Hey, my debt is

21  discharged in bankruptcy."  And Experian -- and in those cases,

22  you know, the Experian policy is to update the debt internally

23  without conducting any further investigation.

24       That didn't occur in this case.  But as you see from

25  the testimony, there's -- you know, there's a human element

1    involved, where you're presented, for example, with the

2    Plaintiff's second dispute.  She didn't say anything.  She

3    submitted -- she submitted one page from a

4    three-and-a-half-year-old bankruptcy credit report.  The

5    dispute agent had to look at that, determine what debt she was

6    disputing, what she was saying about the debt, and then decide

7    how to process it from there.  And so, you know, that's an

8    example of:  The agent reviewed it, determined it was

9    insufficient to create an internal update, and went through the

10   ACDV process.

11           THE COURT:  But that's with regard to the

12   reinvestigation, correct?

13           MR. NICHOLSON:  Yes.

14           THE COURT:  All right.  So with regard to the

15   reinvestigation, it appears that the Eleventh Circuit has said

16   the question of reasonableness under that provision is

17   typically a question of fact.  So I just want to get back to

18   the first instance, and that is when Experian was made aware of

19   this debt and whether it was dischargeable or it was charged

20   off.  And I'm looking at the deposition testimony of your

21   corporate representative that said that the First Progress debt

22   at issue was a typically dischargeable debt.

23           So how does that not weigh against your argument that

24   the Court should find as a matter of law that Experian's

25   reporting was accurate?  Because -- in other words, there's no

1    bankruptcy schedule, but is it Experian's obligation to look at

2    the date the bankruptcy discharge order came to be, and then to

3    look at the debt as to whether it was incurred pre-petition?

4          MR. NICHOLSON:  So -- yeah.  And I appreciate you

5    clarifying the distinction between the reinvestigation and the

6    e(b) claim.

7          So numerous courts have held -- I can -- don't have

8    them handy.  Hofbauer (phonetic), Cristobal have held that

9    1681e(b) -- that the kind of individualized review of

10   bankruptcy proceedings is just beyond the scope of that

11   provision because the CRAs handle untolled amounts of

12   information, just large amounts of information.  So imposing a

13   burden on them to individually review incoming data would be

14   too heavy a burden.

15         So in the context of bankruptcy, the kind of -- the

16   industry, I guess, solution to the inability to do that

17   effectively is the White injunction, where you have a detailed

18   set of procedures, where, upon notice of a bankruptcy

19   discharge, the consumer reporting agency systems will go in

20   and, based on, you know, statistically based assumptions --

21   because again, Experian is a third party to the bankruptcy.

22   It's a third party to the debts.  It just fundamentally can't

23   know which debts are included and which aren't -- makes

24   assumptions about which debts are likely to be discharged, and

25   it updates the reporting based on that.

1          So again, that happened in this case.  And it was only

2     when First Progress returned to Experian and said this debt was

3     actually not discharged.  Because First Progress was never a

4     party of the bankruptcy, it took the position that the debt was

5     not discharged.  Only then did Experian remove the bankruptcy

6     reporting and report it as charged off, as First Progress had

7     been saying it should do all along.

8          THE COURT:  All right.  Is there any other case that

9     the Court should look to, other than the Baitcher case, to find

10    as a matter of law the Court should find that Experian's

11    reporting of this debt was accurate?

12         MR. NICHOLSON:  The cases cited in our reply brief, on

13    Page 2, which apply -- which apply Baitcher, as, again,

14    Experian believes is appropriate, those are -- those are the

15    other cases I'd point to.

16         THE COURT:  All right.  And I just want to understand

17    the import of the bankruptcy credit report.  You've attached it

18    as part of your materials, and it's under seal.  So it's docket

19    filing 55-13, Exhibit M, entitled "Bankruptcy Credit Report."

20    What's the import of this document?

21         MR. NICHOLSON:  That was the document that Plaintiff

22    submitted with her second dispute.  So as I described earlier,

23    you know, when Plaintiff submitted a dispute in January 2021,

24    all she submitted was that document.  It was one page from a

25    three-and-a-half-year-old document that her bankruptcy attorney

1    had pulled for her, you know, prior to her -- well prior to her

2    bankruptcy filing.  And so that was just illustrated as part of

3    Experian's reinvestigation argument, what information Plaintiff

4    provided.

5         THE COURT:  Well, why is -- if the Court looks at this

6    exhibit, why is this information not sufficient to require that

7    Experian conduct a reinvestigation that perhaps would be more

8    robust than the one that it had done in this case?

9         MR. NICHOLSON:  Again, the dispute agent's presented

10   with this document.  They would have to determine what the

11   Plaintiff is asking, what Ms. Campbell is asking it to do.

12        And so, looking at that report, it predated her

13   bankruptcy by a year and a half.  It's showing the -- showing

14   several debts.  It shows the First Progress debt with no

15   balance.  There's no debt at all.  The Plaintiff, in that

16   dispute, did not even identify which of these debts she was

17   disputing.  So a dispute agent went in and and had to determine

18   what she was disputing.  And based on that analysis, they said:

19   "Okay.  She's likely disputing that the First Progress debt was

20   included in her bankruptcy."  But given the nature of the

21   document, it submitted an ACDV to First Progress to -- and

22   instructed them that Plaintiff was disputing it as included in

23   her bankruptcy.

24        And again, Experian's position is, on these facts,

25   given the nature of the Chapter 7 bankruptcy, reliance on the

1    ACDV process is sufficient and is within the -- is outside of

2    the narrow holding of Losch requiring that in certain

3    circumstances CRAs do more.

4         THE COURT:  But what's the import of Ms. Iwanski's

5    testimony where she states that:  "Per Experian's policies and

6    procedures, Plaintiff's December 9th, 2020 dispute was

7    sufficient to require Experian to update the First Progress

8    trade line to reported as discharged in bankruptcy"?

9         MR. NICHOLSON:  Right.  And I would distinguish

10   between Experian's policies and the substantive obligations of

11   the FCRA.  Experian, again, has a deferential policy to

12   consumers, in which, if a consumer says:  "My debt was included

13   in a bankruptcy," it automatically does that without -- updates

14   that without further investigation.

15        And there's no equivalent legislation, regulation,

16   case law that I'm aware of that remotely suggests that that is

17   a requirement of a 1681i reinvestigation.  In fact, 1681i, you

18   know, sets forth very detailed provisions about how a CRA must

19   go about its reinvestigation, reviewing the documentation,

20   contacting the furnisher, promptly updating information based

21   on the furnisher's response.  And so I would just distinguish

22   between Experian's internal policy and the substantive

23   requirements of the FCRA.

24        And I'd also just make the point that here, again,

25   First Progress is telling Experian that its reporting of the

1  debt as discharged was, in fact, wrong.  Plaintiff is

2  contacting Experian and saying the opposite.  So again,

3  Experian is kind of caught in the middle of this dispute

4  between Plaintiff and First Progress about, you know, was her

5  debt discharged in bankruptcy.

6  THE COURT:  Well, I guess I'm back to the Eleventh

7  Circuit case that the question of reasonableness of procedures

8  under 1681e(b) is typically a question for the jury.  So in

9  determining whether Experian followed reasonable procedures,

10  isn't its own policies and procedures relevant?

11  MR. NICHOLSON:  I wouldn't argue that they are not

12  relevant.  But again, the determining factor for, you know, did

13  Experian comply with 1681e(b) or 1681i isn't what Experian's

14  internal procedures were.  It's what those provisions

15  substantively require.

16  And again, the -- no court, regulatory body, no

17  legislation that I'm aware of remotely suggests that Experian

18  is required -- or consumer reporting agencies are required to,

19  you know, essentially take the consumer's word, as Experian's

20  policy does in this instance.

21  THE COURT:  But does that weigh against finding as a

22  matter of law -- in other words, there were two disputes, two

23  notices.  And I understand that you're asking the Court to find

24  as a matter of law.  But if there's information that Plaintiff

25  was disputing that the First Progress report was discharged in

1    bankruptcy, doesn't the Court look to the reasonableness?  And

2    I'm just looking now at the Losch decision, where the court

3    says:  "We cannot say that Experian's procedures were

4    reasonable as a matter of law, such that it was entitled to

5    summary judgment."  Why is this case any different?

6              MR. NICHOLSON:  And again, I'll go back to the Losch

7    language clarifying that its decision was a narrow one and

8    based specifically on that consumer's dispute.  I would, again,

9    put the Plaintiff's dispute and the facts of this case outside

10   of that narrow holding, where, you know, the consumer in

11   Losch -- he provided specific detailed information about

12   pointing to a specific instance that would corroborate his

13   dispute.  The Eleventh Circuit found that there was a fact

14   question.  That fact question was recently resolved in

15   Experian's favor by a jury.

16              But beyond that, this case is a much less detailed

17   dispute.  There's no -- nothing on the bankruptcy docket.

18   Nothing in Plaintiff's bankruptcy filings would substantiate

19   her dispute at all.  And on those facts, Experian's procedures

20   and reinvestigation were reasonable outside of the Losch

21   holding.

22              THE COURT:  But aren't you asking the Court to weigh

23   the facts in terms of the import of each fact to determine

24   whether Plaintiff included sufficient information to

25   substantiate her dispute in determining the reasonableness of

1    your reinvestigation?

2           MR. NICHOLSON:  Sure.  And I understand the general

3    nature.  And I think that Losch allows that in circumstances

4    where the dispute is less detailed or, you know, the

5    reinvestigation is different.  It allows a ruling as a matter

6    of law under reasonableness.

7           And going back a bit, the Court not -- need not even

8    reach that question because, again, this is ultimately a

9    dispute between Plaintiff and First Progress.  It never went to

10   the bankruptcy court to ask them to resolve the dispute whether

11   the debt was discharged.  And Experian is incapable of acting

12   as a tribunal in making determinations about which of competing

13   claims about liability to a debt is correct.

14          THE COURT:  All right.

15          Thank you, Mr. Nicholson.

16          Is there anything further, sir?

17          MR. NICHOLSON:  Nothing further at the moment.

18          THE COURT:  All right.  Thank you, sir.

19          Mr. Steinmetz, I'm looking at the Losch decision.  And

20   actually, before we get to the reinvestigation, I want to

21   address the first instance.  And that is that the Defendant is

22   contending that you cannot show that their reporting was

23   inaccurate because your client never reported the First

24   Progress debt on the bankruptcy schedule.  So tell the Court

25   why that result that Experian is seeking is the wrong result.

```
1              MR. STEINMETZ:  Thank you, Your Honor.

2              So firstly, as readily apparent by its reply, Experian

3    is leaning entirely on the Baitcher decision, which has --

4    there is, you know, recent case law that has, you know,

5    sufficiently determined the Baitcher decision has no bearing on

6    whether a pre-petition unscheduled debt is discharged by

7    operation of a discharge order when there's no claims under

8    523(a)(2), (a)(4), and (a)(6).  And that, at the very least,

9    the In re Simmons case that we cite in our opposition -- that

10   was not addressed by Experian.

11             But setting that aside, as to whether or not -- I

12   mean, I'm not -- I'm not entirely sure how Experian maintains

13   its position, in light of the -- I mean, the tens of cases

14   throughout the district that explicitly hold that

15   dischargeability is not dependent on whether or not it was

16   scheduled.  And --

17             THE COURT:  Well, let me stop you there, because --

18             MR. STEINMETZ:  Yeah.

19             THE COURT:  -- let's look at Benjamin v. Experian

20   Information Systems.  In that case, didn't the plaintiff

21   expressly amend the bankruptcy filings to include the MoneyLion

22   debt?

23             MR. STEINMETZ:  They did.  Yes.

24             THE COURT:  Right.  So doesn't that weigh against the

25   argument?  Wasn't that a no-asset bankruptcy?
```

1          MR. STEINMETZ:  That was a no-asset bankruptcy.  And

2     again, Your Honor, it's not -- it's not on her to -- for a

3     debtor to reopen and try to schedule.  And --

4          THE COURT:  But in this case your client never did.

5     In this case, your --

6          MR. STEINMETZ:  Correct.

7          THE COURT:  In other words, so at the time --

8          MR. STEINMETZ:  I concede.

9          THE COURT:  -- that Experian received the information

10    from First Progress, there was nothing within the bankruptcy

11    petition to alert Experian that this was a dischargeable debt.

12         MR. STEINMETZ:  Well, there was nothing necessary for

13    them to -- I mean, they conceded that it was a dischargeable

14    debt by its very nature, and they had the debt -- and they had

15    the date and they recorded the date of the bankruptcy

16    discharge.  And based on those two facts, whether -- they were

17    aware that it was a Chapter 7 no-asset case, they were aware

18    that the account was opened prior to the petition.  Based on

19    those two facts, per the plethora of -- I mean, I hate to use

20    that word because it's so cliche.  But there's an absolute

21    plethora of case law in the district that demonstrates

22    dischargeability is not dependent on whether or not the debt

23    was scheduled.

24         THE COURT:  All right.  Well, let's stay on that

25    point, because --

1      MR. STEINMETZ:  Yeah.

2      THE COURT:  -- there is a difference between a

3  dischargeable debt and a debt that was actually discharged.

4      MR. STEINMETZ:  Correct.

5      THE COURT:  So are you saying that in a no-asset

6  Chapter 7 bankruptcy filing, that at no time is the Plaintiff

7  required to set forth the debts that he or she seeks to have

8  the Court discharge by way of its bankruptcy order?

9      MR. STEINMETZ:  No.  I'm not saying that.  The

10  Plaintiff is required by bankruptcy law to file -- excuse me --

11  the necessary schedules.

12      What I'm saying is that failure to schedule one of the

13  accounts is not fatal to whether or not that account was

14  subject to the discharge order.

15      THE COURT:  But isn't it fatal to whether Experian

16  could be placed on notice and have an obligation to report the

17  debt as anything other than -- in this case, it wasn't --

18  there's no notification.  At least point to the -- maybe you

19  can -- point to the notification that shows that Experian was

20  on notice that the First Progress debt was actually discharged

21  in the bankruptcy court.

22      MR. STEINMETZ:  Sure.  And again, the notification

23  would be the date that the debt was incurred and the date that

24  the account was created, in reference to the date of the

25  petition.  That in itself is notice.

```
 1          If I can quote to the Benjamin decision that the court
 2     was referring to -- no.  I don't think it was in the Benjamin
 3     decision.  But again, I'm not sure how to set aside --
 4          THE COURT:  Which case should the Court look to that a
 5     debt that was not filed in the bankruptcy petition was
 6     solely -- was discharged as a result of the -- because it was a
 7     Chapter 7 no-assets bankruptcy?
 8          MR. STEINMETZ:  Sure.  I mean, there's -- I would read
 9     through the list of the cases that we cited.  There's In re
10     Poole.  "If a debt at issue is not a debt described under
11     523(a)(2), (4), (6), the debt is discharged by 727, whether or
12     not it was listed."
13          The same holding comes down in In re Reese -- excuse
14     me, not in Reese -- in the Benjamin case, citing:  "The account
15     was not listed in the bankruptcy petition" -- Medley, which is
16     an Eleventh Circuit case cited by the Benjamin decision; In re
17     Real, which is a Middle District 2019 bankruptcy case; In re:
18     Poole, In re Bellavia; In re Shearls, which, again:  "In a
19     no-asset case, a dischargeable debt is discharged even when a
20     creditor has been omitted from the schedule"; in re Warren; In
21     re Brewer; In re Castellana.
22          I'm not even sure -- I mean, Experian failed to
23     address almost the entirety of these cases that seem to have
24     explicit holdings in favor of Plaintiff's position.
25          THE COURT:  So what do you believe that Experian's
```

1    obligation was with regard to the reporting of the First

2    Progress debt?  Were they required to determine whether the

3    Plaintiff had filed a bankruptcy, and there had been a

4    discharge order by the bankruptcy court, and the date of that

5    order?

6             MR. STEINMETZ:  They already knew of that.  They were

7    reporting it from the beginning.

8             And yes, I would say that that would be -- in the

9    event that there was a dispute as to whether or not a debt was

10   discharged in bankruptcy, step one would be to determine

11   whether or not there was an actual bankruptcy discharge.

12            But that was -- that's not even a step here, because

13   Experian knew the entire time that it was reporting the Chapter

14   7 no-asset bankruptcy.  At the very least, I would expect

15   Experian to follow its procedures --

16            THE COURT:  Can I stop you there, Mr. Steinmetz.

17            What information was available to Experian at the time

18   that it reported this debt as -- as not -- I guess it was

19   charged off.  That was how it was referred --

20            MR. STEINMETZ:  Right.

21            THE COURT:  So what information was available to

22   Experian at that point, that you believe Experian then had an

23   obligation to either review or determine and make a final

24   determination as to how to properly report it?  Because it's

25   either reported as discharged in bankruptcy, which is what

1    you're claiming should have been the accurate reporting, or --

2         MR. STEINMETZ:  Correct.

3         THE COURT:  -- discharged off as a loss.  Is that

4    correct?

5         MR. STEINMETZ:  Charged off.

6         THE COURT:  Okay.  The debt was charged off -- I'm

7    sorry.  The debt was charged off as a loss?

8         So in June 2018, with regard to that First Progress

9    debt, what information was available to Experian that it should

10   have reviewed and considered before it reported it as a debt

11   charged off as a loss.

12        MR. STEINMETZ:  Well, the fact that it was a

13   pre-petition debt, the date that the debt was incurred or the

14   account was opened in reference to the date of the discharge

15   order, that it knew it had.  And it should have known that,

16   under Eleventh Circuit law -- that, by operation of the

17   discharge order, the debt was discharged.

18        To the extent that Experian had concerns of it being

19   subject to one of the exceptions under the law, one of the

20   delineated exceptions under the law, then Experian could have

21   made a bit more of an investigation, rather than just

22   forwarding an ACDV and then just parrot back whatever the

23   furnisher responded.

24        THE COURT:  And when you refer to the exceptions,

25   you've referring to Section 523, specifically (2), (4), and

1    (6)?

2            MR. STEINMETZ:  523.  Yes.

3            THE COURT:  All right.  Okay.  I'm following.  I'm

4    following your argument.

5            So at that point, what was Experian obligated to do?

6            MR. STEINMETZ:  So it would take the -- again, it

7    would take the date on which the debt was incurred and then

8    compare it to the date on which the bankruptcy order --

9    discharge order was entered, both of which -- both sets of

10   information it had because it continuously reported it.  And

11   then, if there were concerns that somehow this was subject to

12   an exception, they could have checked the docket to discern

13   whether or not this was subject to an exception.

14           They did no such action.  And to say that they

15   investigated it by, again, just forwarding it to the ACDV, and

16   then depending on whatever the ACDV responded in response, is

17   not reasonable.  And I would double that into -- well, I guess

18   that's a separate analysis with regard to the i claim as to

19   whether or not it followed its own procedures.  But that was

20   definitely -- and again, Your Honor, I think there may be --

21   just to avoid a slight confusion, the duties under e(b) exist

22   for Experian even after it was subject to the notice provided

23   by Plaintiff's dispute.

24           Once it received its first dispute, and then continued

25   to maintain information in its file that reflected it was not

1    discharged, that was also in violation of e(b).  So it could --

2    Experian is able to and was simultaneously in violation of e(b)

3    and i at the same time.

4           THE COURT:  And the statement that Experian concedes

5    the First Progress debt at issue here was dischargeable -- and

6    I know that obviously that was referenced by you as Paragraph

7    49 in their statement of material facts.  But there's a

8    difference between a debt that's dischargeable and a debt that

9    was actually discharged by the bankruptcy court's discharge

10   order.

11          MR. STEINMETZ:  Correct.

12          THE COURT:  So --

13          MR. STEINMETZ:  A debt can be dischargeable both prior

14   to and post a discharge order.  It still would be classified as

15   a debt that is dischargeable under bankruptcy, whether or

16   not -- but I don't think that speaks to whether or not it was

17   discharged.  That's just the nature of the debt.  A debt can be

18   classified as a debt that is subject to dischargeability in

19   bankruptcy law.  That is not -- asking whether or not a debt is

20   dischargeable is not asking whether or not the debt was

21   discharged.

22          In order for it to be discharged, it needs to be a

23   debt that is classified as dischargeable, and then also subject

24   to a post-date of the debt -- a discharge order.

25          THE COURT:  So you believe that Experian's reporting

1    of the debt charged off as a loss is inaccurate because they

2    had available to them the date that the debt was incurred and

3    the date of the discharge order?  And because this is a Chapter

4    7 no-assets bankruptcy, pursuant to at least some of the cases

5    that you have cited to, there was no requirement to actually

6    list the First Progress asset because this is a no-asset

7    bankruptcy?

8              MR. STEINMETZ:  Again, Your Honor, whether or not

9    Plaintiff was required to I don't think is the right question

10   to ask, because it could be -- if Plaintiff had gone through

11   her bankruptcy process, you know, top to bottom, in the way

12   that she should have followed, she likely should have scheduled

13   the debt because that's part of the process.  But Plaintiff --

14   again, as the record shows, and as is also established by the

15   record, the failure to list the debt was an oversight.  And

16   that is not fatal to the debt's dischargeableness, which I

17   would make a distinction from its dischargeability.  Whether or

18   not it was discharged -- it's not fatal to whether or not it

19   was discharged by mistakenly leaving it off the schedule.

20             Again, the reason I say:  "Mistakenly" --

21             THE COURT:  But it's the Plaintiff's position that, in

22   accurately reporting the First Progress debt, Experian was

23   required to report it as discharged in bankruptcy.  Correct?

24             MR. STEINMETZ:  Correct.  Because it was discharged in

25   bankruptcy, Your Honor.  By nature of the fact that it was a

1    pre-petition debt, and that this was a Chapter 7 no-asset

2    bankruptcy, those facts lead to the conclusion that this was

3    discharged.

4         THE COURT:  But yet, you've stated in the same breath

5    that if Experian had doubts as to whether this asset was

6    discharged in bankruptcy, even though it was incurred

7    pre-petition, that Experian had an obligation to investigate

8    whether there were any exceptions that would have been

9    available.

10        MR. STEINMETZ:  Correct.  That would be the only

11   reason, the exceptions.  And when I say:  "Exceptions," the

12   delineated exceptions under bankruptcy law.  That would be the

13   only reason why this pre-petition debt was not discharged, if

14   it was subject to one of those exceptions.

15        Barring the fact that it was -- barring those

16   exceptions, there's no reason that this pre-petition debt

17   should not be subject to the discharge order.

18        THE COURT:  And what's the import of First Progress

19   reporting to Experian that the debt was charged off as a loss,

20   as opposed to a discharged debt?

21        MR. STEINMETZ:  If Your Honor could clarify what

22   exactly --

23        THE COURT:  Yes.  Well, Experian is taking the

24   position that it was First Progress that had reported to

25   Experian that this was a debt that was charged off as a loss,

1    as opposed to a discharged debt in bankruptcy, correct?

2            MR. STEINMETZ:  Correct.

3            THE COURT:  So what is the import of First Progress

4    advising Experian?  Isn't Experian only required to report what

5    it's been reported to by the individual or the creditor?  In

6    other words, First Progress didn't say that it was discharged

7    in bankruptcy.  So why does Experian have that obligation to

8    investigate further?

9            MR. STEINMETZ:  So at the very least, Your Honor, I

10   think if we were going to -- this is -- again, this is all

11   under the rubric of analysis of the e(b) claim.  So if we are

12   going to separate it, Plaintiff would -- even arguendo, if we

13   conceded that, once First Progress provided the information

14   indicating that it believed the account was not subject to a

15   discharged bankruptcy, and then Experian changed its reporting,

16   between that period and Experian's receipt of the first

17   dispute, even arguendo, that might have been within the realm

18   of reasonable procedures to maintain the accuracy of the

19   information.

20           However, once Experian was put on notice that the

21   Plaintiff disputed the fact that this -- that this account was

22   not discharged in bankruptcy -- and what I mean is obviously

23   that she's disputed that it was discharged in bankruptcy --

24   then Experian was put on further notice.  And just to co-opt

25   that line from Losch that Experian cited several times, they

1    were in a different position now.  Now that they had notice

2    that Plaintiff was disputing whether or not this account was

3    discharged, they should have taken any reasonable steps

4    necessary to determine whether or not it was subject to a

5    discharge exception or whether or not, by its own assumption,

6    the debt was discharged due to the pre-petition nature of the

7    debt.

8        THE COURT:  And it was my understanding that Experian

9    was taking the position that, since it reported the First

10   Progress debt accurately, because the Plaintiff did not report

11   it on the bankruptcy schedule, it was not required to -- to

12   conduct any further reinvestigation because it had initially --

13   that's the end of the inquiry that the Court should make.  Is

14   that accurate?

15       MR. STEINMETZ:  Well, I wouldn't agree -- no.  I

16   wouldn't agree that they were reporting it accurately.  And

17   then would that fall (inaudible) because it wasn't scheduled --

18   again, an accurate reporting of this account would have been

19   "discharged in bankruptcy" because of the date on which it was

20   incurred and because of the date of the bankruptcy.

21       It's one thing to say that they were reporting it

22   accurately because the furnisher advised them that this account

23   was not discharged.  But again, once they had notice from

24   Plaintiff that, in fact, Plaintiff believed the account was

25   discharged in bankruptcy -- which the record is clear that both

1    disputes were sufficient to convey that dispute -- it should

2    have followed its own procedures and then updated it -- updated

3    the reporting of the account to reflect that it was actually

4    discharged in bankruptcy.

5         THE COURT:  Understood.

6         And with regard to the first dispute, that was on

7    December 9th, 2020; is that correct?

8         MR. STEINMETZ:  Yes.  Correct.  I believe it was --

9         THE COURT:  So tell me why Losch doesn't foreclose

10   liability.  I mean, Experian's making the argument that its

11   conduct before it received that first dispute was that it

12   reported the debt as First Progress had reported it to

13   Experian.  So if Experian did not have any reason to believe

14   that the information supplied was unreliable -- I'm looking at

15   Losch --

16        MR. STEINMETZ:  Yes.

17        THE COURT:  -- then why was Experian, in the

18   Plaintiff's view, required to take further action?

19        MR. STEINMETZ:  Are we still under e(b) or i?

20        THE COURT:  Well, now I'm under 1681i.

21        MR. STEINMETZ:  Okay.

22        THE COURT:  Because I think you're saying that there

23   was a question as to whether Experian should have looked at the

24   nature of the bankruptcy and determine that the bankruptcy

25   discharge had discharged all pre-petition debts.  So you've

1    made that argument.

2              MR. STEINMETZ:  Right.

3              THE COURT:  You cited to the case law.  Now I'm

4    getting to the 1681i and looking at the Losch case.

5              MR. STEINMETZ:  Okay.  So I mean, I think the Benjamin

6    case sort of wraps it up.  If I could cite to Benjamin, at 35,

7    it says:  "Experian also argues it cannot be held liable when

8    the effect of a discharge is unclear or requires a legal

9    counsel to determine.  From a legal standpoint, there's nothing

10   particularly complicated about the effect of a Chapter 7

11   bankruptcy.  Experian's own procedures already recognize the

12   consequences of a general discharge of a Chapter 7 bankruptcy.

13   Pursuant to the White order, Experian's initial scrub, which

14   occurs automatically, marks certain accounts as discharged if

15   it meets certain criteria, and Experian's automated procedures

16   does not involve looking into the specifics of bankruptcy

17   proceedings to determine whether a debt was properly

18   discharged."

19             The undisputed evidence shows that Experian received

20   notice of Plaintiff's Chapter 7 bankruptcy, that her credit

21   file reveals that Experian knew the account predated the

22   bankruptcy.  Those facts alone are sufficient notice under the

23   FCRA.

24             So again, once it received notice from the dispute,

25   all Experian had to do was look at the date on which the debt

1    was incurred, and look at the date of the bankruptcy order, and

2    determine under the -- due to the nature of the bankruptcy

3    discharge, whether or not those two facts aligned.  It failed

4    to do that.  That would have been the minimal steps necessary

5    to comply with its duties under the FCRA.

6            THE COURT:  And do you believe there's a distinction

7    in looking at the Benjamin case -- and I understand that the

8    Benjamin case is looking at the White settlement in terms of

9    what it informed CRAs.  But with regard to the Benjamin case,

10   do you believe that there's a distinction between the facts

11   here and the facts there, because the plaintiff in the Benjamin

12   case had amended her petition before the bankruptcy court and

13   included -- specifically included that MoneyLion debt?

14           MR. STEINMETZ:  I mean, I think there is a distinction

15   in the facts, but I don't think that that distinction cuts to

16   the heart of the issue.  Again, based on that citation that I

17   read from Benjamin, regardless of whether or not the bankruptcy

18   petition was amended -- which is an option.  The bankruptcy law

19   allows for amendments.  But that is not what -- that's not the

20   critical factor for discharge.

21           Dischargeability, again, is just subject to those few

22   facts of which Experian had on its -- on its record.  And

23   that's reflective of the manner in which Experian's required

24   to, per its own policies, respond to such disputes.  Because of

25   these -- the simple facts of the timing of the incurrence of

1    the debt, and the timing of the bankruptcy discharge, because

2    that's the narrow framework in which the determination needs to

3    be made, Experian's dispute procedures reflect that, should a

4    dispute be made, if it's -- if it's a pre-petition debt and --

5    if it predates the debt, and a discharge was ordered, Experian

6    should automatically assume that it was discharged.

7         Whether or not it needs to go to see whether it's

8    subject to an exception, that may come into play if the

9    furnisher -- if part of the dispute indicates that the

10   furnisher, for instance, is disputing the dischargeability of

11   the debt.  But on the plain facts of the disputed -- of the two

12   disputes at issue, Experian was required to follow its own

13   procedures and reasonably update the reporting.

14        THE COURT:  All right.  Mr. Steinmetz, is there

15   anything further, sir?

16        MR. STEINMETZ:  Nothing further, Your Honor.

17        THE COURT:  All right.  Mr. Nicholson, I want to get

18   back to the Benjamin case, because it appears to the Court that

19   there really is no discernable difference between the fact that

20   in Benjamin the Plaintiff amended the bankruptcy petition to

21   include the MoneyLion debt versus here where this is a no-asset

22   bankruptcy filing and a bankruptcy order.

23        I mean, the court notes that the White settlement

24   informs that CRAs generally know or should know that

25   pre-petition, unsecured consumer debts such as the MoneyLion

1    account -- I don't see why that's any different than the First

2    Progress debt here -- are typically discharged in Chapter 7

3    proceedings, and refers to the Morris case.  And then the court

4    continues:  "As the White settlement makes clear, the CRAs knew

5    that unsecured consumer debts, such as the Comenity account,

6    are typically discharged in Chapter 7 proceedings."  That's

7    citing in the White settlement -- or the case.  "The White

8    settlement itself provides anything that not updating such

9    accounts of a Chapter 7 bankruptcy may fail to comport with

10   1681e(b)."  So why would that holding not apply here?

11          MR. NICHOLSON:  So -- excuse me -- a couple factual

12   differences here.  Experian did, in fact, update this account

13   initially, as required by the White injunction.  So that notice

14   point -- Experian followed the White injunction perfectly in

15   this case.  The White injunction recognizes that not all debts

16   are discharged in bankruptcy.  There are exceptions.  And

17   it's -- a consumer reporting agency like Experian is not in a

18   position to know if one of those exceptions apply.

19          So I talked earlier about the manual update that First

20   Progress sent to Experian.  That's using an industry standard

21   code, consumer information indicator.  And there's a value

22   where they put in queue, and that's a specific instruction to a

23   consumer reporting agency like Experian that this debt wasn't

24   discharged in bankruptcy.  And that's set forth in the industry

25   standard reporting guidelines that furnishers are required to

1    follow.  It's also set forth in the White order itself that,

2    when a furnisher believes that a debt has not been discharged,

3    it can override the assumption by informing Experian that -- by

4    submitting that queue indicator and informing Experian that it

5    wasn't discharged.

6          As to Benjamin's broader holding -- or dicta, I would

7    say, because the issue wasn't squarely before the court --

8    Experian didn't argue accuracy because, again, plaintiff

9    amended her schedules.  We respectfully contend that that's

10   inconsistent with Baitcher and the cases that properly apply

11   Baitcher.  I'll cite -- I'll reference the matter of Springer,

12   In re Springer, 127 B.R. 702.  That's cited in our reply brief,

13   but:  "Failure to schedule a known debt in a no-asset case does

14   not necessarily cause a debt to be non-dischargeable," citing

15   Baitcher.  "In a no-asset case, if a debtor's failure to

16   schedule a known debt is for reasons of honest mistake, and not

17   due to fraud or intentional design, the debt is still

18   discharged.  The burden is on the debtor, however, to

19   demonstrate the absence of fraud or intentional design," again,

20   citing Baitcher.

21         So the Baitcher rule applied in Springer and other

22   cases Experian cites.  It makes clear that the Benjamin

23   analysis is incorrect, that not all pre-petition unsecured

24   debts are discharged, and there are exceptions, and this is one

25   of those exceptions.  And again, the competing case law

1    citations of Plaintiff and Experian -- the fact that there is a

2    circuit split, in which several circuits hold that -- you know,

3    take Plaintiff's position that scheduling a debt effectively

4    doesn't matter if it's a no-asset bankruptcy.  And then you

5    have other circuits, again, the Eleventh, the First, the Fifth,

6    the Seventh, that say:  "No.  Wait.  The debtor needs to

7    schedule all debts."  And if they fail to do so, thereby

8    depriving the creditor of the right to participate in the

9    bankruptcy, they have to come and explain why and show the

10   court -- meet their burden under Baitcher, for example, of

11   showing that the debt was innocently excluded.  So I would

12   respectfully contend that Benjamin was wrong on that point of

13   the law.

14            THE COURT:  All right.  Is there anything further,

15   Mr. Nicholson?

16            MR. NICHOLSON:  Nothing further from Experian, Your

17   Honor.

18            THE COURT:  All right.  Because I believe that it is

19   the Defendant's burden to show as a matter of law that there

20   can be no liability under the FCRA.  And it would appear that

21   there are obviously several issues, but two main issues.  And

22   that is whether the Plaintiff's failure to specifically report

23   the First Progress debt, and the fact that the bankruptcy's

24   discharge order obviously did not speak of specific debts --

25   whether it was discharged by operation of the discharge order,

1    or more importantly, for purposes of Experian's motion, that

2    the reporting of the debt as charged off as a loss, as opposed

3    to a discharged debt, was accurate.

4           And I see a distinction in the Baitcher case.  The

5    Court noted that the dischargeability of that debt was under

6    all subsections of 11, United States Code, Section 523.  And

7    contrary to the argument, I find that the Benjamin case is

8    truly persuasive.  And that is, in this case, Experian was

9    aware of the Plaintiff's bankruptcy filing, was aware of the

10   discharge dates.

11          And with regard to the credit report, the Court looks

12   to the case law that this case is no different than what is

13   commonly referred to as a no-asset Chapter 7.  There are no

14   assets to administer.  And as such, the fact that the Plaintiff

15   did not include the First Progress debt does not mean that

16   there's no bearing on the discharge of the debt by virtue of

17   the discharge order.

18          So in terms of as a matter of law, the Court

19   certainly -- based on the case law that's been provided, it

20   appears that the First Progress debt in this no-asset Chapter 7

21   bankruptcy was discharged by operation of the discharge order.

22   And where Experian reported the account as charged off, with an

23   open balance, and without noting the debt as discharged in

24   bankruptcy, that the Court cannot find as a matter of law that

25   that was accurate.  And whether First Progress's debt was

1    discharged, or Experian was required to make that

2    determination, I do believe that that weighs toward the

3    question as to whether the -- the reporting by Experian was, in

4    fact, accurate.

5         The second part, with regard to the notification by

6    the Plaintiff, is a question of fact.  And the Eleventh Circuit

7    has said that the question of reasonableness of procedures

8    under 1681e(b) is typically a question for the jury.  And

9    whether Experian followed reasonable procedures to ensure the

10   accuracy of its reporting, or whether it conducted a proper

11   reinvestigation, I believe is also a question of fact, and the

12   Court cannot rule as a matter of law in favor of Experian.

13        So I believe that, based on the motion that's before

14   the Court, it does appear that there would be a question of

15   fact as to the reasonableness of the reinvestigation, and

16   certainly the reporting of the debt does not appear to be

17   accurate.

18        So with regard to the pending motion for summary

19   judgment, the Court cannot find as a matter of law that

20   Experian is entitled to judgment.  And based on that, the

21   motion for summary judgment would be denied and the case will

22   proceed to trial.

23        Are there any other issues that the Court can address

24   for the parties?

25        MR. STEINMETZ:  None from Plaintiff, Your Honor.

41

1            MR. NICHOLSON:  Nothing further from Experian, Your

2    Honor.

3            THE COURT:  All right.  Then, if there's nothing

4    further, the Court will enter its order and the case will

5    continue to proceed on a path to trial.

6            MR. STEINMETZ:  Thank you, Your Honor.

7            MR. NICHOLSON:  Thank you, Your Honor.

8            THE COURT:  Okay.  Have a nice afternoon.

9            MR. NICHOLSON:  Thank you counsel.

10           MR. STEINMETZ:  You, too.

11       (Proceedings concluded at 10:08 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    UNITED STATES OF AMERICA        )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5            I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 12th

9    day of July, 2022, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.  Please note:  This

12   hearing occurred during the COVID-19 pandemic and is therefore

13   subject to the technological limitations of reporting remotely.

14           I further certify that this transcript contains pages

15   1 - 42.

16           IN WITNESS WHEREOF, I have hereunto set my hand at

17   Miami, Florida this 5th day of August, 2022.

18

19                    /s/Yvette Hernandez
                      Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
20                    400 North Miami Avenue, 10-2
                      Miami, Florida 33128
21                    (305) 523-5698
                      yvette_hernandez@flsd.uscourts.gov
22

23

24

25